UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF: | CIVIL ACTION |
| THOMAS MACK AND<br>MARY SUSAN MACK | NO. 17-3587 |
| DEBTORS | SECTION "F" |

## ORDER AND REASONS

Before the Court is an appeal from the United States Bankruptcy Court's order denying First Bank's motion to modify the automatic stay and to pursue a rule for judgment *pro confesso* and motion for accounting filed in state court. For the reasons that follow, the Court REMANDS the decision for reconsideration consistent with this Order and Reasons.

**Background**

When Thomas and Mary Mack filed for Chapter 11 bankruptcy in January 2017, an automatic stay prevented their mortgage holder, First Bank, from pursuing claims against an LLC in which Thomas Mack owned a majority interest. Despite First Bank's request, the Bankruptcy Court would not modify the stay. This appeal followed.

Thomas and Mary Mack's home in Metairie, Louisiana was destroyed by flooding in 2015, prompting them to relocate to the Northshore. Shortly thereafter, the first mortgage holder

1

foreclosed upon the Metairie home and successfully bid on the home at the sheriff sale. The second mortgage holder, First Bank, received no distribution on its second mortgage interest. Accordingly, First Bank sued the Macks to collect the mortgage deficiency. On September 20, 2012, the 24th Judicial District Court for the Parish of Jefferson entered a consent judgment requiring that Thomas Mack (among others) pay about $400,000, plus reasonable future attorney fees and collection costs. In 2015, the Plaquemines Parish Sheriff seized and sold a vessel owned by the Macks pursuant to a writ of fieri facias, resulting in a judgment credit of $25,000.

Thomas Mack has a membership in two LLCs, Matrix Hospitality Group, L.L.C. and Matrix Hospitality Group – NOLA, LLC. Matrix Hospitality Group,[1] L.L.C., a hotel management company, is Mack's employer; Mack owns a 60% membership interest in it. Matrix's managing member is Ty Angeron. Mack is paid by Matrix in three ways: (1) a monthly salary as a 1099 employee; (2) a periodic disbursement of profits as a part-owner; and (3) a performance bonus paid in April by particular clients if Matrix is able to meet client-set goals.

---

[1] The parties focus on the conduct of Matrix Hospitality Group, L.L.C., and Mack's relationship with it. Although it is unclear to the Court, it appears that Matrix Hospitality Group – NOLA, LLC is less active or inactive. Accordingly, the Court's mention of "Matrix" refers to Matrix Hospitality Group, L.L.C.

2

On September 2, 2016, a Louisiana state district court granted First Bank's motion for a charging order, and charged the membership interest of Thomas Mack in both LLCs with payment of the judgment, and named the LLCs as garnishees. Because the Sheriff was unable to locate the Matrix agent for service of process, it served Mack, on behalf of Matrix, on October 14, 2016. However, Matrix Hospitality Group, L.L.C. and Matrix Hospitality Group – NOLA, LLC failed to respond to the garnishment interrogatories, and failed to withhold any funds that would otherwise be due to Mack. Matrix Hospitality Group, L.L.C. paid Mack over $30,000 after the garnishments and charging order were served. When the LLCs failed to provide their garnishment answers, First Bank filed a Rule for Judgment *Pro Confesso* against both garnishees, and filed a motion to compel them to account for all sums paid to Mack since service was effected on January 24, 2017. Three days later, Mack and his wife filed for Chapter 11 bankruptcy. By then, First Bank's judgment had increased to $789,212.85.

First Bank moved for relief from the automatic stay on January 31, 2017. Mack opposed the motion, and the Bankruptcy Court heard oral argument on the issue on April 6, 2017. Ruling from the bench, the bankruptcy judge denied First Bank's motion to modify the stay.

3

First Bank appealed and filed its brief on June 19, 2017. Mack[2] filed his appellee brief on July 18, 2017. Matrix adopted all arguments made by Mack.

I.

A district court functions as an appellate court when reviewing a bankruptcy court's decision. In re Matter of Webb, 954 F.2d 1102 (5th Cir. 1992). The standard of review depends on whether a finding of fact or conclusion of law is being reviewed. When findings of fact are reviewed, the clearly erroneous standard applies. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). However, if the findings of fact are premised on an improper legal standard, then that standard is not protected by the clearly erroneous standard and it is reviewed de novo. Matter of Missionary Baptist Foundation of America, 818 F.2d 1135 (5th Cir. 1987). Jurisdiction is a legal determination that is reviewed de novo. See Matter of U.S. Brass Corp., 301 F.3d 296, 303 (5th Cir. 2002).

II.

---

[2] Only Thomas Mack is the target of First Bank's appeal of the Bankruptcy Court's order denying relief or modification of the automatic stay.

4

The issue on appeal is whether the Bankruptcy Court erred in denying First Bank's motion for relief from the automatic stay so it could proceed in its action against Matrix in state court. Ruling from the bench, the bankruptcy judge stated "I am going to deny the Motion to Modify the Automatic Stay. And my reasoning is that this is a relatively new Chapter 11. . . . The mover, First Bank and Trust, has the burden of proving its entitlement to a modification of the stay to allow it to go forward in state court. And I am not at all sure what the effect on the inchoate or budding Chapter 11 would be if First Bank goes back to state court and proceeds against the LLC. And because of that and because the bank has the burden of proof I'm denying the motion."

A.

As a preliminary matter, the appellant argues in the alternative that the Bankruptcy Court did not have jurisdiction over this matter. It is undisputed that Matrix is a non-debtor. The appellant, First Bank, contends that the Bankruptcy Court does not have jurisdiction to resolve the dispute between non-debtors, absent some impact on the bankruptcy estate. Because there has been no showing that the state proceedings would impact the estate, First Bank argues, the Bankruptcy Court does not have authority to resolve the dispute between the bank and Matrix. Accordingly, the parties should be permitted to return to state court to resolve their dispute.

First Bank's position is not supported by law. Federal law vests district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. District courts may refer such cases to the bankruptcy judges for the district, as this Court has done here. 28 U.S.C. § 157(a). The bankruptcy judge is authorized to "determine all cases under title 11 and all core proceedings arising under title 11," including motions to modify the automatic stay. 28 U.S.C. § 157(b)(1),(b)(2)(G). Core proceedings also include "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." The state proceeding affects the liquidation of Mack's assets because Mack's entire income, and therefore funding source for the bankruptcy plan, is contingent on Matrix's existence and continued pay out, which the state proceeding may effect. Therefore, the Bankruptcy Court had jurisdiction to rule on Frist Bank's motion to modify the stay.

B.

The parties focus on the scope of the automatic stay. An automatic stay is issued when a debtor files for bankruptcy under Section 11. 11 U.S.C. § 362. The purpose of the stay is to "protect the debtor's assets, provide temporary relief from creditors, and further equity distribution among the creditors by forestalling

6

the race to the courthouse." GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985). The automatic extension applies only to debtors, but there are exceptions. Reliant Energy Services, Inc. v. Enron Canada Corp., 349 F.3d 816, 825 (5th Cir. 2003). Automatic stays apply to non-debtors in rare and "unusual circumstances" where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." [3] Reliant Energy, 349 F.3d at 825 (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). A bankruptcy court may extend an automatic stay to non-debtors if "a claim against the non-debtor will have immediate adverse economic consequences for the debtor's estate." In re Long, No. 12-13590, 2013 WL 663287, at *2-3 (Bankr. E.D. La. 2013) (quoting Queenie, Ltd. V. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003)); Reliant Energy, 349 F.3d at 825. Courts consider whether "the bankrupt estate would be adversely effected because the creditor's action

---

[3] Additionally, the Fifth Circuit has held that a court has discretionary power to stay proceedings against a non-debtor "in the interest of justice and in control of their dockets." Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir. 1983). The party seeking a stay bears the burden of justifying a delay and 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" Id. (quoting Landis v. North American Co., 299 U.S. 248, 255 (1936)).

would prevent the non-debtor from contributing funds to the reorganization, or would consume time and energy of the non-debtor that would otherwise be devoted to a reorganization effort." In re United Health Care Organization, 210 B.R. 228, 233 (S.D.N.Y. 1997). There is not an "identity of interest" if there is "no claim of a formal tie or contractual indemnification . . . between the debtor and nondebtor." Reliant Energy, 349 F.3d at 825. "This Court reviews the scope of an automatic stay *de novo*." Id.

Section 362 provides that the court may grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The statute provides that the party seeking relief "has the burden of proof on the issue of the debtor's equity in property," but the party seeking to maintain the stay "has the burden of proof on all other issues." 11 U.S.C. § 362(g). The party invoking the stay has the burden to demonstrate that the exception applies and the stay may be extended to them. Beran v. World Telemetry, Inc., 747 F.Supp.2d 719, 723-24 (S.D. Tex. 2010); Luppino v. York, 562 B.R. 894, 898 (W.D. Tex. 2016)("The party seeking to invoke the stay through this exception has the burden to show that it is applicable.")

The appellant contends that because both First Bank and Matrix are non-debtors, Matrix, not First Bank, had the burden to prove that no cause exists to modify the stay. Because they did not meet that burden, the stay should have been modified. Mack ignores the burden of proof issue, and instead contends that the present

8

circumstances warrant the Bankruptcy Court to extend the coverage of the automatic stay to Matrix. Mack claims that Matrix is Mack's sole source of employment and sole source of funding for his plan of reorganization. Mack argues that the purpose of the Bankruptcy Code is to provide debtors with space from creditors to re-organize without their interference, so if First Bank is permitted to proceed in enforcing a judgment against Matrix in state court, which he is entirely reliant on to develop and fund his plan, it will disrupt Mack's bankruptcy proceedings and undermine the very purpose of the Code.

The Court is unable to evaluate the Bankruptcy Court's decision in denying the modification of the scope because the Bankruptcy Court never made a finding on whether the scope of the stay included Matrix. Although it is arguably implied that the Bankruptcy Court determined that it did because it denied First Bank's motion for relief, neither party raised the issue and the Bankruptcy Court did not state on the record whether the automatic stay applies to Matrix. Further, the Bankruptcy Court held that First Bank had the burden to modify the automatic stay, but the appellees, the parties seeking to maintain the stay, actually had the burden. The Bankruptcy Court failed to apply the appropriate standard to determine if modifying the stay was appropriate. Because the Bankruptcy Court did not require the appellees to meet their burden, the factual record is not sufficiently developed for

this Court to determine whether the circumstances justify the rare finding that the stay applies to non-debtors.[4] The Bankruptcy Court, and not this Court, is in the better position to determine whether the scope of the automatic stay can include Matrix. Or differently stated, if the Mack and Matrix interests are so united that a judgment against Mack could be said to be a judgment against Mack.

The Court remands to the Bankruptcy Court to determine whether Mack and Matrix can satisfy their burden that an exceptional circumstance exists and the automatic stay applies to Matrix, a non-debtor, under the standard articulated in Reliant Energy.[5] If the Bankruptcy Court determines that Matrix is not within the scope of the automatic stay, then First Bank is entitled to proceed against Matrix in state court. Conversely, if Matrix is within the scope of the automatic stay, Mack is entitled to continue with his bankruptcy proceeding, and First Bank's judgment against Matrix will be stayed until the conclusion of the proceeding.

---

[4] For instance, it would be useful to know the extent of any contractual relationship between Mack and Matrix, if Matrix has any relevant corporate governance provisions, specifics of Matrix's business and profit stream, and the extent to which Mack and Matrix's financial assets are intertwined.

[5] The Bankruptcy Court may justify a finding that the scope of the automatic stay includes Matrix based on other exceptions besides Reliant. Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir. 1983). Above all, the Bankruptcy Court should provide a legal basis for departing from the typical course of action of limiting a stay to the judgment debtor.

Accordingly, IT IS ORDERED: that the case is REMANDED to the Bankruptcy Court for a determination of the scope of the automatic stay consistent with the standards discussed herein. IT IS FURTHER ORDERED: that the appeal is dismissed without prejudice.

New Orleans, Louisiana, March 29, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE